Case 4:20-cv-01081-BSM Document 18 Filed 02/10/21 Page 1 of 12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 1 0 2021

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

| | |
|---|---|
| DISABILITY RIGHTS ARKANSAS, INC. | : : : |
| Plaintiff, | : : |
| v. | : CIVIL ACTION NO. : 4:20-cv-01081-BSM |
| SOLOMON GRAVES, in his Official Capacity as SECRETARY OF THE ARKANSAS DEPARTMENT OF CORRECTIONS, | : : : : : |
| Defendant. | : : |

### DEPARTMENT OF JUSTICE STATEMENT OF INTEREST

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517,[1] because this litigation involves the proper interpretation and application of the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the "PAIMI Act"), 42 U.S.C. §§ 10801–10851, a statute that provides the national network of federally designated protection and advocacy organizations ("P&A") with "access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3). In addition, the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, empowers the Department of Justice to uphold the federal rights of persons residing in State and other institutions. In light of the United States' interest in ensuring that the federal rights of such persons are protected, it offers the Court its understanding of the statute and regulations at issue in this case.

---

[1] Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

1

In particular, this Statement explains that the PAIMI Act and its implementing regulations permit Disability Rights Arkansas, the State's P&A, to obtain records from the state prison system about an inmate who committed suicide. *See* 42 U.S.C. § 10805(a)(4)(B); 42 C.F.R. § 51.41. Accordingly, the P&A's complaint states a plausible claim for relief, and the Court should deny the defendant's motion to dismiss.

## Background

Disability Rights Arkansas brought this case against Solomon Graves, in his official capacity as Secretary of the Arkansas Department of Corrections ("State"), seeking access to records pursuant to the PAIMI Act, then—after the defendant moved to dismiss—filed an Amended Complaint. Am. Compl. 2, ECF No. 12. The State filed a second motion to dismiss, ECF No. 13, which is now pending.

## Facts Alleged

The P&A learned from a news article that an individual had committed suicide by hanging from his prison cell bars while in solitary confinement. Am. Compl. 11, ECF No. 12. In December 2019, the P&A began investigating his death and learned that, although the individual had "a significant family history of mental illness" and had attempted suicide before while in prison, the State had offered a limited set of mental health services and did not provide the psychiatric medication that had been prescribed for him before his incarceration. *Id.* at 11–12, 15. The P&A also reviewed records from the individual's earlier admission to a psychiatric facility, where his treating professionals noted "several mental health problems." *Id.* at 12–13.

The P&A's investigation raised other questions about how State prison staff treated the individual and monitored his condition while in solitary confinement. The P&A received information that the individual was repeatedly taken out of his cell and beaten by prison staff out

2

of view of the surveillance cameras. *Id.* at 11. Additionally, the State reported having checked on the individual 36 minutes before he was found dead, although he had obscured the video camera focused on the inside of his cell about 75 minutes prior, and the camera showing the outside of his cell did not record anyone visiting him during that time. *Id.* at 12.

On January 27 and February 3, 2020, the P&A requested, pursuant to its access authority, certain records and video surveillance footage from the Arkansas Department of Corrections. *Id.* at 13. The State refused to comply without a signed medical authorization from the individual's next of kin because he was "a non mental health inmate." *Id.* at 13–14. The individual was an adult when he died, and he did not have a "legal guardian, conservator, or legal representative" as defined by the PAIMI Act. *Id.* at 15.

## Argument

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under Fed. R. Civ. P. 12(b)(6), the factual allegations in the complaint are viewed in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371–72 (8th Cir. 2017) (quotation omitted).

### A. The P&As Investigate Abuse and Neglect of Persons with Disabilities, Including in Correctional Facilities

Congress created a system of independent P&As in response to a history of widespread abuse and neglect of individuals with disabilities and mental illness by the providers charged with their care. *See* 42 U.S.C. § 10801. P&As were established in each state "to ensure that the

3

rights of individuals with mental illness are protected," with broad authority to investigate potential incidents of abuse and neglect occurring in facilities that provide overnight care and treatment services, such as hospitals, nursing homes, board and care homes, homeless shelters, and jails and prisons. 42 U.S.C. §§ 10801(b), 10802, 10805(a)(1)(A); 42 C.F.R. § 51.2. The PAIMI Act also empowers P&As to access the records of any individual with mental illness who cannot authorize such access due to his or her "mental or physical condition" and who lacks a "legal guardian, conservator, or other legal representative," where the P&A either receives a complaint or finds "there is probable cause to believe that such individual has been subject to abuse or neglect." 42 U.S.C. § 10805(a)(4)(B). Notably, the statute does not require the P&A to both receive a complaint and make a probable cause determination in order to request records: either one suffices.

The PAIMI regulations define a complaint broadly: it "includes, but is not limited to any report or communication, whether formal or informal, written or oral, received by the P&A system, including media accounts, newspaper articles, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual with mental illness." 42 C.F.R. § 51.2. In other words, both media reports and information from anonymous sources may qualify as complaints that trigger P&A access to records.

Even without a complaint, the PAIMI regulations expressly empower the P&A to make a probable cause determination. 42 C.F.R. §§ 51.41(b)(2)–(3), 51.31(g); Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. 53548, 53552 (Oct. 15, 1997) ("[D]etermination of whether sufficient probable cause exists shall be based on the independent judgment of the P&A system," though the P&A may "articulate the basis of its probable cause determination when requested."). In this context, probable cause means there are "reasonable grounds for

belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect." 42 C.F.R. § 51.2. Further, the P&A may base the assessment "on reasonable inferences drawn from . . . experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect." *Id.* The regulation does not require that any specific type of evidence support the P&A's probable cause determination.

The P&A may obtain records under the PAIMI Act about individuals with mental illness in many institutional settings, including those who are incarcerated. Congress provided that covered "facilities may include, but need not be limited to, . . . jails and prisons." 42 U.S.C. § 10802(3). The PAIMI regulations explicitly consider individuals with mental illness who are "involuntarily confined in a detention facility, jail or prison" as among those for whom the P&A may advocate or investigate complaints. 42 C.F.R. § 51.2. P&As may serve prisoners with mental illness who are in the general population: they do not need to be in a specific mental health or forensic unit, *id.*, and they need not receive any particular level of mental health services in prison. *See* Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. at 53552.

Finally, to ensure an effective protection and advocacy system, the PAIMI regulations provide for broad access to records so that the P&As may investigate suspected abuse and neglect of persons with mental illness. *See* Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. at 53559–60 (noting "the intention that all records are to be accessible" when relevant). P&As may obtain a wide spectrum of records, including video and other mediums, and the regulations provide an illustrative rather than an exhaustive list of the substantive types of records subject to P&A access. 42 C.F.R. § 51.41(c). In clarifying this

expansive access, the Department of Health and Human Services ("HHS") sought to "minimize the amount of resources spent on determining the standards for access, in service of protecting and advocating for the legal and human rights of individuals" with disabilities. Developmental Disabilities Program, 80 Fed. Reg. 44796, 44801 (July 27, 2015); *see* 62 Fed. Reg. at 53549 (HHS has attempted to make the implementing regulations for the PAIMI Act and the Developmental Disabilities Act consistent "[t]o the greatest extent possible").

### B. The P&A May Access Records Based on a Complaint

The existence of a complaint alone is enough for the P&A to request records for its investigation of potential abuse or neglect of an individual with mental illness. The PAIMI regulations include media accounts and anonymous reports "from any source" among several forms of complaint that would warrant P&A access to records. 42 C.F.R. § 51.2. Here, the P&A alleges that it first learned of the individual whose records are at issue from a news article indicating he committed suicide while in solitary confinement, and also that an unnamed source reported that the individual was directly abused by prison staff. Am. Compl. 11, ECF No. 12. These complaints suffice under the PAIMI Act to empower the P&A's access and to defeat the State's motion to dismiss.

### C. The P&A Determines if Probable Cause Exists to Believe Abuse or Neglect Occurred

P&As also have authority under the PAIMI Act and implementing regulations to determine whether probable cause exists to believe that abuse or neglect has occurred, and Disability Rights Arkansas alleges it made that determination here.

The PAIMI Act does not allow the State to second-guess the P&A's determination of probable cause. In *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689, 692 (D. Ariz. 2000), a state behavioral health agency refused to allow a P&A access to records under PAIMI.

The health agency withheld some files because it disagreed with the P&A's probable cause determination, which the P&A had based on its review of mortality reports prepared regularly by service providers. *Id*. at 691. The court held that the P&A "is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect." *Id*. at 693. The court reasoned, "To conclude otherwise would frustrate the purpose of the P&A laws to establish an effective system to protect and advocate for the rights of individuals with disabilities." *Id*.

Arkansas asserts that unlike the *Allen* defendants, it is not second-guessing the P&A's determination of probable cause; rather, the P&A's determination here has "a complete lack of factual basis," in part because it "does not point to reports generated by a state or governmental agency." Def. Br. Supp. Mot. Dismiss 12–13, ECF No. 14. But the PAIMI Act and regulations do not prescribe the types of sources or information the P&A must use to arrive at its probable cause determination—just that it must have "reasonable grounds for belief" that an individual with mental illness experienced abuse or neglect. 42 C.F.R. § 51.2. Here, the P&A's allegations identify a media account, unnamed sources, and apparent inconsistencies between the State's own video surveillance and two investigation files as support for its probable cause determination. Am. Compl. 11–12, ECF No. 12. Moreover, the State's novel proposal that the P&A must first somehow obtain a report by a governmental agency that this agency would be under no obligation to provide—a report that may or may not exist—before it may access records is inconsistent with the PAIMI Act and regulations.

Nor is a P&A's probable cause determination subject to judicial review. *Off. of Prot. & Advoc. for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 321 (D. Conn. 2003) ("[C]ourts have rejected attempts to require judicial review of the P&A's probable cause

7

determination."). *See, e.g.*, *Prot. & Advoc. Sys., Inc. v. Freudenthal*, 412 F. Supp. 2d 1211, 1219 (D. Wyo. 2006) (P&A is the final arbiter of probable cause); *Iowa Prot. & Advoc. Servs. v. Rasmussen*, 206 F.R.D. 630, 638 (S.D. Iowa 2001) (the P&A, not a state agency, shall make the relevant probable cause determination).

In arguing for judicial review here, the State cites two summary judgment decisions denying access to records where the P&As had made institution-wide probable cause determinations based on specific incidents, and the courts questioned whether there was a reasonable basis to assert that these incidents could be generalized more broadly. Def. Br. Supp. Mot. Dismiss 13–14, ECF No. 14 (citing *Charlotte-Mecklenburg Bd. of Educ. v. Disability Rts. N.C.*, 430 F. Supp. 3d 74 (W.D.N.C. 2019); *Disability Law Ctr. v. Discovery Acad.*, No. 2:07–cv–00511–CW–PMW, 2010 WL 55989 (D. Utah Jan. 5, 2010)). Even assuming these cases were correctly decided, *see Disability Rts. Ohio v. Buckeye Ranch*, 375 F. Supp. 3d 873, 882–84 (S.D. Ohio 2019) (disputing *Discovery Academy*'s treatment of probable cause under Fourth Amendment warrant standard because PAIMI Act context differs from criminal investigation, making judicial review inappropriate), they are inapposite. *See id.* at 885–88 (collecting cases finding P&A probable cause determination does not require judicial review and limiting application of *Discovery Academy* given its facts). Here, the P&A's probable cause determination and its request for documents both relate to one individual. The P&A has alleged that it both received complaints and made a substantiated probable cause determination of abuse or neglect of an individual with mental illness, either of which is sufficient to support its records request. The Court should thus deny the State's motion to dismiss.

### D. The PAIMI Act Does Not Require Individualized Determinations of Mental Illness Prior to P&A Access

The P&A does not need to demonstrate that the individual whose records it seeks "fit[s] the definition of 'individual[] with a mental illness'" in the PAIMI Act. *Armstrong*, 266 F. Supp. 2d at 314–15 (granting the P&A access to state department of corrections' records). "Demanding a conclusive, individualized showing" of mental illness before granting access to records "would reserve to [the State] a gate-keeping function contrary to the specific terms and general purpose" of the PAIMI Act. *Disability Rts. N.Y. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 1:18-CV-0980 (GTS/CFH), 2019 WL 4643814, at *27 (N.D.N.Y. Sept. 24, 2019) (quoting *Ky. Prot. & Advoc. Div. v. Hall*, No. 01-CV-0538, 2001 WL 34792531, at *2 (W.D. Ky. 2001)). In fact, a P&A's ability to make an affirmative showing that a specific individual has a mental illness may be "severely hampered by [the State's] own refusal" to produce the records requested. *Armstrong*, 266 F. Supp. 2d at 315 (collecting cases).

Instead, courts have consistently held that "evidence that a facility has previously housed individuals who are mentally ill, as well as evidence that some current residents may be mentally ill is sufficient under PAIMI to merit access by [P&As]." *Id.* at 314 (applying such standard to correctional facilities, despite defendants' proposed limit to facilities "whose express purpose was to treat and/or rehabilitate mental illness"); *see also Disability Rts. N.Y.*, 2019 WL 4643814, at *27 (collecting cases); *Ala. Disabilities Advoc. Program v. Safetynet Youthcare, Inc.*, 65 F. Supp. 3d 1312, 1322 (S.D. Ala. 2014) (same). Courts considering this question for state correctional facilities have found that they often house individuals with mental illness. *See, e.g., Mich. Prot. & Advoc. Servs., Inc. v. Evans*, No. 09-12224, 2010 WL 3906259, at *4 (E.D. Mich. Sept. 30, 2010); *Armstrong*, 266 F. Supp. 2d at 314 (describing this as a "fact" that is "self-evident"). This assumption applies to the general population, as well as to more specialized

9

units; "a requirement that an inmate be housed in the mental health unit of a [Department of Corrections] facility in order to invoke [the PAIMI Act's] protections would overlook too many members of the class sought to be protected, since only those prisoners with the most serious mental illness are housed in such a unit." *Armstrong*, 266 F. Supp. 2d at 317. In addition, such a requirement would improperly make the P&A's access to inmates' records dependent on the ability and inclination of the State—the very entity subject to the P&A's oversight—to screen inmates for mental illness and to provide appropriate services.

Finally, even if an individualized showing were necessary, courts have found that the fact an individual committed suicide may indicate he had a mental illness, which further supports the P&A's right to access his records so as to investigate any abuse or neglect. *See, e.g., id.* at 314 (seven of eight of the state prison inmates whose records were at issue had committed suicide, which "certainly suggests that each suffered from some sort of mental illness or condition"); *accord Mich. Prot. & Advoc. Servs., Inc.*, 2010 WL 3906259, at *4. In addition, the P&A's Amended Complaint alleges other potential indications of mental illness as well, such as an inpatient psychiatric admission and prior suicide attempt in prison. These allegations are sufficient to satisfy the PAIMI Act.

### E. The P&A Has Broad Access to Records under the PAIMI Act

In empowering P&As to advocate for individuals with disabilities, Congress used "quite broad" language to grant P&As "access to all records of any individual" who meets certain criteria. *Disability Rts. Ohio*, 375 F. Supp. 3d at 888 (quoting *Ctr. for Legal Advoc. v. Hammons*, 323 F.3d 1262, 1292 (10th Cir. 2003)); *Disability Rts. N.Y. v. Wise*, 171 F. Supp. 3d 54, 60 (N.D.N.Y. 2016) ("Clearly, the purpose of the statutes weighs in favor of robust disclosure."); 42 U.S.C. §§ 10805(a)(4), 10806(b)(3)(A). The implementing regulations

emphasize that the P&A "shall have access to the records" of certain individuals, and they use expansive language to provide several examples of records to which P&As are entitled. *See* 42 C.F.R. § 51.41(b), (c).

Courts evaluating requests for prison records have not cabined P&A access simply because the records were from a correctional facility, rather than a facility dedicated exclusively to providing care and treatment for individuals with mental illness. In *Disability Rights New York v. Wise*, the court granted access to prison records and noted that "[t]he breadth of records which the regulations require disclosure of, as well as the fact that they contain an inclusive and not exhaustive list of records that must be disclosed," means that the P&A is "entitled to all relevant records" that the State holds. 171 F. Supp. 3d at 61; *see also Mich. Prot. & Advoc. Servs., Inc.*, 2010 WL 3906259, at *3–4 (granting P&A access to "[a]ll documentation (including any incident reports, case notes, witness statements, mental health records, etc.)" after county jail inmate committed suicide); *Armstrong*, 266 F. Supp. 2d at 308, 314 (granting P&A access to "psychiatric, medical and all other records relating to the[] deaths" of eight inmates, including seven by suicide). The State's assertion—that the P&A may only access records pertaining to care or treatment, or abuse, neglect, and injury; that the prison did not provide the deceased individual with care or treatment, and the P&A did not allege the records pertain to an abuse or neglect investigation; and that it thus need not release records, Def. Br. Supp. Mot. Dismiss 14–15, ECF No. 14—is unsupported by the statute, regulations, and case law.

## Conclusion

For the reasons above, the Court should deny the State's motion to dismiss. Disability Rights Arkansas has alleged it received complaints and made a probable cause determination about an individual who committed suicide while in prison—either of which entitles the P&A

11

under the PAIMI Act and its implementing regulations to access correctional records related to this individual.

Respectfully submitted,

Dated: February 10, 2021

JONATHAN D. ROSS
Acting United States Attorney

SHANNON SMITH
Arkansas Bar No. 94172
Assistant United States Attorney
425 West Capitol, Suite 500
Little Rock, AR 72201
Phone: (501) 340-2600
Shannon.Smith@usdoj.gov

DANIEL J. BERRY
Acting General Counsel

SEAN KEVENEY
Acting Principal Deputy General Counsel
U.S. Department of Health and Human Services
200 Independence Ave., S.W.
Washington, DC 20201

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief

BENJAMIN O. TAYLOE, JR.
Deputy Chief

SARAH G. STEEGE
Trial Attorney
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E.
Washington, DC 20002
Phone: (202) 598-5786
Sarah.Steege@usdoj.gov